# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

WYNDHAM VACATION )
RESORTS, INC., )
                                )
        Plaintiff, )
                                )
v.                               )        No. 3:10-cv-1028
                                )        Chief Judge Haynes
TIMESHARE ADVOCACY )
INTERNATIONAL, LLC, )
SEAN K. AUSTIN and )
CHARLES MCDOWELL, )
                                )
        Defendants. )
                                )

## MEMORANDUM

Plaintiff, Wyndham Vacation Resorts, Inc. ("Wyndham"), filed this action against Defendants, Timeshare Advocacy International, LLC ("Timeshare"), Sean K. Austin and Charles McDowell, asserting claims for violation of the Tennessee Uniform Trade Secrets Act ("TUTSA"), Tenn. Code Ann. § 47-25-1701 et al.,violation of the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-101 et al., the unauthorized practice of law, intentional interference with business relations/unfair competition, civil conspiracy, breach of contract, procurement of breach of contract, and unjust enrichment under Tennessee law. On July 19, 2012, in accordance with the jury's verdict, the Court awarded judgment to the Defendants on all claims and dismissed this action with prejudice. (Docket Entry No. 165).

Before the Court are Defendant's motions for attorneys' fees and costs. (Docket Entry Nos. 175 and 186). Defendants Austin and Timeshare seek $86,647.95 in attorneys' fees and costs.

1

(Docket Entry No. 176). Defendant McDowell seeks $76,418.02 in attorneys' fees and costs. (Docket Entry No. 186). Defendant McDowell's joins in and incorporates the motion for attorneys' fees and costs filed by Defendants Austin and Timeshare. Plaintiff opposes these motions, contending, in sum: Defendant have not established the necessary elements for an award under the TUTSA and the TCPA; and that the Defendant's fees are not reasonable and lack sufficient documentation to determine reasonableness. (Docket Entry Nos. 190 and 194).

## A. Analysis of the Motions

Defendants first assert that their motion for attorneys' fees and expenses is properly before the Court. (Docket Entry No. 176 at 13). Defendants contend that although the Court denied their November 14, 2011 motion to amend their answer to assert counterclaims for fees and expenses, the present motion is proper under Fed. R. Civ. P. 54(d)(2)(a). Fed. R. Civ. P. 54(d)(2)(a) provides: "[a] claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." Defendants cite Rissman v. Rissman, 229 F.3d 586 (7th Cir. 2000), where a defendant who failed to file a counterclaim for fees and expenses was permitted to seek fees and expenses under a fee shifting statute. Id. at 588. Defendants argue that federal courts interpret Rule 54(d)(2)(a) as "unless the substantive law requires the fees being sought to be proved as an element of damages, a defendant seeking them need not include the request in a counterclaim." (Docket Entry No. 176 at 14). Defendant also likens this action to litigation in the "context of the fee-shifting provision of the Fair Debt Collection Practice Act," where the decisional law "suggest[s] that a party *may* (but is not required to) assert a counterclaim for such fees, all of the cases recognize that such claims are properly made at the end of trial, pursuant to a motion under Rule 54(d)(2)(a). Id.

2

Defendants next contend that "[Plaintiff] never had anything close to cognizable TUTSA or TCPA claims, and that [Plaintiff] never even believed that the Defendants had absconded from [Plaintiff] with owner lists or owner information." (Docket Entry No. 176 at 3). Defendants assert that they are entitled to fees and expenses under the TCPA on three grounds: (1) Plaintiff's claims lacked factual merit; (2) Plaintiff's claim was frivolous; and (3) Plaintiff's claim was brought for harassment purposes. Id. at 20-22. Defendants assert that Plaintiff's complaint alleges that Defendants violated the TCPA by "wrongfully acquir[ing] [Plaintiff's] confidential, proprietary information for use in a competing business." Id. at 9 (citing Docket Entry No. 1). Defendants assert that at trial, Plaintiff's theory of the case changed from the allegations in the complaint. Id. Defendants contend this change is reflected in the jury charge: "Plaintiffs contend that the letters Defendants prepared for Plaintiff's customers lacked facts or contained false statements and therefore that these letters lacked a factual basis or contained false statements constitute an unfair or deceptive trade practice." Id. at 9-10. Defendants assert that Plaintiff's complaint did not make any allegations regarding false letters, Plaintiff did not make any statements about false letters in the pretrial order, nor did any of Plaintiff's witnesses testify about false letters at trial. Id.

Defendants also contend that Plaintiff's claim under the TUTSA was objectively specious and that "[Plaintiff's] witnesses gave extensive, but extremely vague testimony about the trade secrets that [Plaintiff] ha[d] allegedly developed." Id. at 16. Defendants assert that Plaintiff relied merely on general categories of allegedly misappropriated trade secrets instead of identifying the allegations with reasonable particularity. Id. at 18. Defendants contend that this action is similar to Degussa Admixtures, Inc. v. Burnett, 277 Fed. Appx. 530 (6th Cir. 2008), where the plaintiffs relied solely on an allegation that the defendants knew of the plaintiff's generalized trade secrets and the

3

defendants received attorneys' fees under an identical Michigan statute.

Defendants also contend that Plaintiff's made a misrepresentation to the Court about Defendants' preemption defense. Id. at 12. Defendants state:

> During the argument regarding Defendants' Rule 50 Motion, [Plaintiff's] counsel represented to the Court that the Court had orally ordered Defendants to brief the issue of TUTSA preemption at the final pretrial conference conducted on December 16, 2011. Defendants recalled no such order. Defendants have ordered the transcript of the pretrial conference, . . . A review of the transcript confirms that the Court never ordered Defendants to file a brief of any kind.
>
> After some discussion at the pretrial conference regarding whether the intracorporate conspiracy doctrine applied to conspiracy claims against officers of the same corporation, the Court announced that the defense was "gone," and stated that the Defendants could bring it up in a motion to reconsider. The Court, however, did not order Defendants to brief the issue, and there was no discussion of any kind regarding a brief of the preemption issue.

Id. at 9 and n. 2.

In response, Plaintiffs contend that Defendants cannot seek recovery of all the fees associated with defending all of Plaintiff's claims because the Court already decided the preemption defense. (Docket Entry No. 190 at 4). Plaintiff next contends that there is not any bad faith evident in this action. Id. at 5. Plaintiff argues that "Defendants essentially ask the Court to adopt a standard that equates 'bad faith' with a jury's conclusion that Plaintiff did not carry its burden of proof" and contend that this is contrary to the majority of courts that require proof of subjective misconduct. Id. at 7. Plaintiff contends that Degussa, cited by Defendants, is distinguishable from this action because the Degussa plaintiff voluntarily dismissed that action at the dispositive motion stage and disclaimed some of the allegations. Id. at 8.

Plaintiff also asserts that the claim under the TCPA was not frivolous, without legal or factual merit or brought for the purpose of harassment. Id. at 9. Plaintiff contends that Defendant must show

4

"some additional indicia of frivolity or bad faith," more than merely that Plaintiff's claims were unsuccessful. Id. Plaintiff also argues that Defendants' fees are unreasonable because of vagueness, block billing and because Defendants do not separate the fees for each claim. Id. at 13-14. Plaintiff also contends that Defendant McDowell's motion does not carry his burden of proof regarding an award of fees because he merely incorporates by reference the arguments laid out by Defendants Timeshare and Austin. (Docket Entry No. 194).

In their reply, Defendants assert that Plaintiff's TUTSA claim was objectively specious and that Plaintiffs engaged in subjective misconduct, as required for an award of attorneys' fees and expenses. (Docket Entry No. 192). Defendants contend that Plaintiff's TUTSA claim was objectively specious because there was not any evidence to corroborate the claim. Id. at 3. Defendants also contend that the complete lack of evidence is so severe that the Court may infer subjective misconduct, but they cite the following subjective misconduct during litigation:

> (a) [Plaintiff] refused to specifically identify particular trade secrets that were misappropriated, yet continued to prosecute the case;
>
> (b) [Plaintiff] identified a 30(b)(6) representative who knew virtually nothing about the alleged trade secrets that had been misappropriated by Defendant;
>
> (c) [Plaintiff] misrepresented to the Court that the Court had ordered Defendants to file a brief regarding preemption; and
>
> (d) [Plaintiff] led the Court to believe (through the Complaint, pre-trial order, and other filings) that [Defendants Austin and McDowell] had stolen owner lists and declined clear opportunities to inform the Court that this was not the case.

Id. at 9. Defendants also contend that the Glanton standard applies to this action to compel an award of attorneys' fees under the TCPA because Plaintiff's claim were highly unlikely to succeed. Id. at 11. In addition, Defendants contend that all of the Plaintiff's claims were based on a common core

5

of facts and legally related. Id. at 12. As such, Defendants assert that "it is virtually impossible to separate the time spent defending the claims that went to trial other than the TUTSA and TCPA claims." Id. at 13.

Defendants also assert that the requested fees and expenses are reasonable. Id. at 14. Defendants concede their errors in duplicating some fees on July 9, 10, 11, and 13, 2012 and also concede the reduction of the fee request by $630 for fees associated with drafting written discovery. Id. Defendants also contend that the requested hourly rates are reasonable and the invoices contain sufficient detail without unnecessary or unproductive billing.

### B. Conclusions of Law

"In diversity cases, attorneys' fees are governed by state law." Hometown Folks, LLC v. S & B Wilson, Inc., 643 F.3d 520, 533 (6th Cir. 2011). Under Tennessee law, "a party in a civil action may not recover attorney's fees absent a specific contractual or statutory provision providing for attorney's fees as part of the prevailing party's damages." House v. Estate of Edmonds, 245 S.W.3d 372, 377 (Tenn. 2008). The Defendants rely upon fee-shifting provisions of the TUTSA and the TCPA for an award of fees.

Under Tennessee law, the four elements for misappropriation of a trade secret are: "(1) the existence of a trade secret; (2) communication of the trade secret to the defendant while in a position of trust and confidence; (3) defendant's use of the communicated information; and (4) resulting detriment to the plaintiff. Straienko v. Cordis Corp., 429 F.3d 529, 600 (6th Cir. 2005). The TUTSA provides for reasonable attorneys' fees to the prevailing party when:

(1) A claim of misappropriation is made in bad faith,

(2) A motion to terminate an injunction is made or resisted in bad faith, or

6

(3) Willful and malicious misappropriation exists.

Tenn. Code Ann. § 47-25-1705(1).

An award of attorneys' fees and expenses under this section requires a finding of subjective bad faith. Tennessee has not defined "bad faith" under the attorneys' fees provision, but "other States have concluded, . . . that bad faith 'requires objective speciousness of the plaintiff's claim . . . and . . . subjective bad faith in bringing or maintaining the claim.'" Degussa Admixtures, Inc. v. Burnett, 277 Fed. Appx. 530, 534 (6th Cir. 2008) (affirming the district court's award of attorneys' fees to the prevailing party when the plaintiff failed to establish more than the existence of generalized trade secrets and the employee's knowledge of them); see also Dana Ltd. v. Am. Axle & Mfg Holdings, Inc., No. 110CV450, 2012 WL 2524008, at *9 (W.D. Mich. June 29, 2012) ("'[a] party alleging trade secret misappropriation must particularize and identify the purportedly misappropriated trade secrets with specificity.'"). But see McKesson Medical-Surgical, Inc. v. Micro Bio-Medics, Inc., 266 F. Supp. 2d 590, 597 (E.D. Mich. 2003) (denying defendant's request for attorneys' fees because no clear evidence that Plaintiffs took action for improper purposes amounting to bad faith).

In Degussa, the district court awarded attorneys' fees to the defendant upon finding that "[a]t best, Plaintiff has alleged the existence of only general trade secrets." Degussa Admixtures, Inc. v. Burnett, 471 F.Supp.2d 848, 857 (W.D. Mich. 2007). Defendants rely on Degussa for their contention that Plaintiff alleged merely generalized trade secret misappropriation claims such that the Court should award attorneys' fees to the Defendants. Plaintiff, however, asserts Degussa is distinguishable because "the plaintiff voluntarily dismissed the action at the dispositive motion stage, and the representatives of the plaintiff actually disclaimed certain allegations in the Complaint." (Docket Entry No. 190 and 194). Yet, in Degussa, the court's ruling in favor of attorneys' fees was

7

not based upon the plaintiff's voluntary dismissal or the disclaimed allegations. Degussa, 471 F. Supp.2d at 857. The Degussa court awarded attorneys' fees upon finding the plaintiff's claim "objectively unsupported" after reviewing the parties briefing and exhibits. Id.

> Further, the [Degussa] Court conclud[ed] that the deposition testimony of Plaintiff's witnesses consistently demonstrat[ed] that Plaintiff's fundamental complaint was that [Defendant employee] was using his general industry knowledge and preexisting relationships to compete for customers he had cultivated while employed at Degussa. In the absence of a non-competition agreement or the unfair use of genuine trade secret information, such conduct was perfectly proper. Plaintiff's invocation of the MUTSA to prevent legitimate competition constituted an improper purpose.

Id. at 858.

Plaintiff argues that the following testimony, presented by Wayne Baker at trial, precludes a finding of bad faith:

- He was familiar with the training received by Defendants Sean Austin and Charles McDowell in their job as salespeople for Plaintiff.

- Sean Austin and Charles McDowell received training regarding the sales methods and the product that Wyndham is selling.

- The product sold by Wyndham is different than the product sold by other timeshare companies.

- Wyndham considers its sales methods, techniques, programs and other training materials to be confidential proprietary information.

- The sales methods, techniques, programs and other training methods is information not available to the general public.

- Wyndham takes steps to ensure that the information regarding sales methods, techniques, programs and other training materials remains confidential.

(Docket Entry Nos. 190 and 194 (citing trial transcript)). Yet, the Defendants contend that the "specific trade secrets that Defendants allegedly used improperly, . . . , are not identified in the Complaint. . . . [And], [i]n its Response to Defendant's Interrogatories, Plaintiff did nothing more

8

than repeat, word for word, the general categories of trade secrets set forth in the Complaint."

(Docket Entry No. 176 at 3-4). The Defendants cite the Plaintiff's witnesses' testimony as their proof

that Plaintiff's brought a TUTSA claim in bad faith:

> - **Dave LaBelle:** Mr. LaBelle testified that he had "no idea" whether Mr. Austin or Mr. McDowell took any confidential information when they left Wyndham. Mr. LaBelle did not testify that Mr. Austin or Mr. McDowell misappropriated any particular trade secret or confidential information.
>
> - **Wayne Baker:** Mr. Baker testified that Wyndham provided extensive training to Austin, without testifying about any specific training or trade secrets allegedly provided to Mr. Austin. Mr. Baker did not provide any testimony regarding what trade secrets were allegedly misappropriated by the Defendants.
>
> - **John Monaweck:** Mr. Monaweck testified that his understanding of trade secrets is "everything that we learn formally and informally as an employee of a company." Based on his faulty understanding, Mr. Monaweck testified that the letters written by TAI contained "internal terms" from the Wyndham "sales compliance policies" that had to have been learned by Defendants while employed by Wyndham. However, Mr. Monaweck did not testify about any "internal terms" used by TAI in the letters that were actually secret. Furthermore, Mr. LaBelle and Mr. Baker testified that the "sales compliance policies" were not secret.
>
> -**Sean Austin:** Mr. Austin testified that: He did not take an owner list or any usable owner information with him when he left Wyndham. Although he had a spreadsheet of his sales commissions containing the names of the Wyndham owners to whom he made sales while at Wyndham, there was no owner contact information on this spreadsheet or other information that he could have used to contact the owners on the spreadsheet. He further testified that he never contacted any of the owners on his commissions spreadsheet.
>
> -**Chuck McDowell:** Mr. McDowell testified that: Only the managers had access to the owner database, which was password protected. He did not take any information with him when he left Wyndham.

(Docket Entry No. 176 at 8-9).

Here, the Court concludes that Plaintiff's TUTSA claim was not in bad faith. The record

reflects testimony related to Austin and McDowell's access to confidential owner information. Both

9

Defendants were bound by a salesman agreement in that they agreed not to disclose Plaintiff's

confidential information. See Docket Entry No. 170, Trial Transcript at 25-26. There is not any

evidence reflecting clear evidence of bad faith that would compel an award of attorneys' fees.

Accordingly, Plaintiff's TUTSA claim was not brought in bad faith such that attorneys' fees are

warranted under the statute for the defense of Plaintiff's TUTSA claim.

The second statute Defendants rely upon for an award of attorneys' fees is the TCPA:

> In any private action commenced under this section, upon finding that the action is
> frivolous, without legal or factual merit, or brought for the purpose of harassment,
> the court may require the person instituting the action to indemnify the defendant for
> any damages incurred, including reasonable attorneys' fees and costs.

Tenn. Code Ann. § 47-18-109(e)(2). The Court has the discretion to award attorneys' fees to the

prevailing party upon making a specific finding of frivolity. Harvey v. Covington, No. M2000-

01184-COA-R3-CV, 2001 WL 120733, at *5 (Tenn. App. Ct. Feb. 14, 2001). The Tennessee

appellate court has stated:

> [T]he provision for attorney fees found in Tenn. Code Ann. § 47-18-109(e)(2) is
> designed to discourage consumers from using the Act to file frivolous or baseless
> claims. It is not intended to punish plaintiffs who can demonstrate wrongful acts on
> the part of defendants, but who are unable to prevail on their claims for other reasons.
> Too strict an application of this subsection would result in a "winner take all"
> situation, regardless of the circumstances, that would undermine the purpose of
> protecting the consumer. We therefore do not interpret the statutory term "without
> legal or factual merit" to mean without sufficient merit to prevail, but rather as so
> utterly lacking in an adequate factual predicate or legal ground as to make the filing
> of such a claim highly unlikely to succeed.

Glanton v. Bob Parks Realty, No. M2003-01144-COA-R3-CV, 2005 WL 1021559, 9 (Tenn. Ct.

App. Oct. 24, 2005).

The Defendants contend that the Plaintiff's TCPA claim that the letters written by Defendant

10

Timeshare contained false allegations, lacked factual merit, was frivolous and brought for purposes of harassment. Defendants assert that the TCPA claim contained false allegations because there was no evidence that the letters were false and also because Plaintiff did not even attempt to argue the falsity of the letters in the closing argument. (Docket Entry No. 176 at 21). Defendant also contends that the TCPA claim was frivolous because Plaintiff did not have any witnesses that could testify to the truth or falsity of the letters. Id. at 22. Defendants assert that Plaintiff only brought this claim for purposes of harassment, alleging that Plaintiff has filed numerous similar actions, and "called only three witnesses, introduced only nine exhibits, and . . . took less than a day for Wyndham to put on its case in chief." Id. at 23. In response, Plaintiff argues that Defendant has not show any proof of bad faith in Plaintiff's TCPA claim and asserts that "[t]he fact that, ultimately, the jury found those individuals not to be liable does not entitle Defendants to attorneys' fees under the TCPA." (Docket Entry No. 190 and 194).

The Court concludes that the record reflects that Plaintiff able to provide some testimony and evidence regarding some wrongful act by Defendants under the TCPA. See Glanton, 2005 WL 1021559 at *9. During trial, John Monaweck testified as to letters that Plaintiff believed contained false allegations and were written by Defendants and the Plaintiff introduced several of the alleged false letters into evidence. See (Docket Entry No. 173, Trial Transcript at pp 38-47). Accordingly, the Court concludes that Plaintiff's TCPA claim was not frivolous or baseless such that attorneys' fees are warranted under the TCPA.

Tennessee law requires "litigants to pay their own attorneys' fees in the absence of a statute or contractual provision otherwise." State v. Brown & Williamson Tobacco Corp., 18 S.W.3d 186, 194 (Tenn. 2000). Tennessee courts have considered whether a party should be awarded the totality

11

of attorneys' fees incurred in defending more than a claim under a statute authorizing attorneys' fees.

> The question, then, is whether the plaintiff should be required to pay the totality of the defendants' attorney fees incurred in defending both the Tennessee Consumer Protection Act claim and the misrepresentation claim under the authority granted only in the Act. Based on the record before us, we conclude he should not. The purposes of the Act would not be furthered by such an award, and the initiation of the lawsuit was a result, at least in part, of the defendants' actions. They were not uninvolved or innocent bystanders in the miscalculation of the square footage.
>
> Understandably, the affidavits of the defendants' attorneys did not break down their fees according to which of the plaintiff's claims the work related. It would be nearly impossible to accurately separate the legal costs incurred for defending one claim from those incurred for defending the other. We are aware that if we remand this case to the trial court for performance of that task, the parties will have to incur additional fees for an exercise of dubious value. In the interest of judicial economy, we therefore hold that the plaintiff shall be responsible for only one-half of the attorney fees incurred by the defendants.

Glanton, 2005 WL 1021559, at **10-11. Assuming that the Defendants would only be entitled an award of attorneys fees under the fee shifting provisions of the TUTSA or the TCPA, they would not be entitled to an award of attorneys' fees on any of the other state law claims, such as intentional interference with business relationships, unfair competition, civil conspiracy, breach of contract or unjust enrichment. Here, like in Glanton, the Court concludes that it would be impossible to separate the fees associated with the defense of each of Plaintiff's individual claims. Accordingly, because the Court concludes that any award of attorneys' fees is inappropriate.

### C. Conclusion

For these reasons, the Court Defendants' motions for an award attorneys' fees should be denied.

An appropriate Order is filed herewith.

ENTERED this _10th_ day of January, 2013.

12

WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court

13